UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DRAE HARRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:16-cv-00028-JMS-MJD |
| | ) |
| DR. MANDIP BARTLES, | ) |
| R. ROBINSON, | ) |
| DR. NEAL MARTIN, | ) |
| | ) |
| Defendants. | ) |

**Entry Denying Motions for Summary Judgment**

Plaintiff Drae Harris, a prisoner incarcerated in the Wabash Valley Correctional Facility, commenced this civil rights action pursuant to 42 U.S.C. § 1983 on January 21, 2016. He alleged that defendants Dr. Mandip Bartles, Nurse R. Robinson, and Dr. Neal Martin, all responsible for providing health care at the prison, were deliberately indifferent to his serious medical needs. Plaintiff and defendants have each submitted motions for summary judgment. For the following reasons defendants' motion for summary judgment, dkt. [19], is **denied**, and plaintiff's motion for summary judgment, dkt. [24], is also **denied**.

**I. Discussion**

A.   Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P*. 56(a). The movant bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of designated evidence that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  After "a

properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and citation omitted).

A factual issue is material only if resolving the factual issue might change the outcome of the case under the governing law. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting Stokes v. *Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)). Instead, it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

"The existence of cross-motions for summary judgment does not, however, imply that there are no genuine issues of material fact." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers*, 335 F.3d 643, 647 (7th Cir. 2003). Specifically, "[p]arties have different burdens of proof with respect to particular facts; different legal theories will have an effect on which facts are material; and the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may highlight the point that neither side has enough to prevail without a trial." *Id.* at 648.

B.   Factual Contentions

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment

standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to the non-moving party with respect to each party's motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000). In most instances, the evidence is simply contradictory. The facts are taken from the affidavits submitted by the parties, with some contextual details supplied by the assertions in the pleadings.

On June 2, 2015, plaintiff fell during a recreation period and his right hand was stepped on, breaking it. Dkt. 2, p. 3. The parties agree that on that date – June 2 – plaintiff submitted a health care request form to be seen for shoulder/arm numbness that he believed was caused by a bump on his back. Dkt. 30-1, p. 1; Dkt. 20-1, p. 3. The next day, on June 3, 2015, plaintiff was seen by Nurse Robinson for the bump on his back. The parties disagree as to what happened at that visit. Plaintiff's evidence is that he complained to Nurse Robinson about the pain in his hand, which was visibly swollen, and asked to see the doctor. She refused to allow him to see the doctor and failed to have the hand x-rayed and did not nothing for his hand pain. Defendants' evidence is that Nurse Robinson saw plaintiff for the bump on his back but did not make any record of plaintiff complaining about a hand injury and she saw no sign of injury.

Plaintiff was next seen by medical personnel when he saw Dr. Byrd on June 9, 2015, as a follow-up visit to his earlier hemorrhoid surgery. Plaintiff's evidence is that he complained to Dr. Byrd about his hand injury, but that Dr. Byrd told him he could only be seen for one condition per medical visit. Dr. Byrd told him to put in a request to be seen by the medical personnel if his hand was not better within two weeks. Defendants dispute this, providing evidence that Dr. Byrd discussed a number of issues with plaintiff, but an injury to his hand was not one of them. *See* Dkt. 20-1, p. 3 at ¶ 7; dkt. 30-1, p. 2; and dkt. 24-2 (request for health care form from plaintiff

3

noting that a doctor told him to request a follow-up if his hand had not improved, dated July 13, 2015).

Plaintiff's evidence next shows that he saw Dr. Martin on June 18, 2015, who only addressed the numbness in plaintiff's arm and told him to submit another health care request form if his hand did not get better. Dkt. 30-1, p. 2. Dr. Martin's affidavit states that when he saw plaintiff on that date, plaintiff never mentioned anything about his hand.

The parties agree that plaintiff was seen by Nurse Robinson on July 16, 2005, for an injury to his right hand. Plaintiff's description of the meeting is that Nurse Robinson told him there was no break and told him to squeeze on a rolled up sock to strengthen his hand. Defendants add that Nurse Robinson was able to manipulate a full range of motion in plaintiff's right fifth finger, found the grip on the right hand to be slightly less than in the left hand, and saw no evidence of fracture. Nurse Robinson prescribed ice and cool compresses for any pain or swelling and gave him instructions for using a rolled up sock for exercises to strengthen the hand. She also told plaintiff to request further health care if his symptoms did not get better or worsened. Dkt. 30-1, p. 2; dkt. 20-1, p. 5.

On July 30, 2015, plaintiff submitted a request for health care complaining of pain and a lack of strength in his right hand. Plaintiff says he was never seen for this request; defendants' evidence is that because he was already scheduled for a chronic care visit for August 18, he would be seen then for his concerns about his hand. Dkt. 30-1, p. 2; dkt. 20-1, pp. 5-6.

At the August 18, 2017 medical visit, plaintiff's evidence is that when he presented his complaints about his hand, Dr. Martin told him that he was being seen only for chronic care and he would have submit another health care request form to be seen for his hand. Dkt. 30-1, p. 3. Dr. Martin states in his affidavit that at this visit, plaintiff was seen for his hypertension and never

4

complained about his hand, finger, or pain. Dr. Martin states that plaintiff "was in no apparent distress." Dkt. 20-1, p. 6.

Plaintiff filed an informal grievance on September 10, 2015, and was seen by Nurse Robinson six days later to resolve concerns about his hand. Nurse Robinson gave plaintiff a therapeutic squeeze ball and requested that plaintiff's hand be x-rayed. Dr. Martin approved the x-ray request.

Defendants' evidence shows that a radiology report dated September 19, 2015, stated that x-ray images of plaintiff's "right hand fail to demonstrate acute fracture or dislocation. There is a deformity of the fifth metacarpal (fifth finger) . . . suggesting previous fracture." Dr. Martin avers that the previous fracture was fully healed and could have occurred at any time. But Dr. Martin adds that "[t]here was no evidence that [plaintiff's] right hand was ever fractured." Dkt. 20-1, p. 6.

Plaintiff shows that on September 29, 2015, he submitted a health care request form asking for results of the x-rays and was told that Dr. Martin would decide what to do and schedule him for an interview, but an interview never happened. Dkt. 30-1, p. 3. When he finally saw Nurse Robinson on October 5, 2015, plaintiff complained that the therapeutic ball was not helping. He was scheduled for physical therapy. Dkt. 20-1, p. 7; dkt. 20-1, p. 3.

Plaintiff requested a health care visit on October 6, 2015, for problems with his hip. When he was called to be seen, he refused the visit because the problem had gone away. Dkt. 30-1, p. 4. Defendants do not dispute this assertion.

The parties also agree that plaintiff received four physical therapy sessions between October and December, 2015. However, defendants' evidence is that physical therapy resulted in plaintiff having increased flexion and strength in his right fifth finger, and that there is no

5

indication that surgery or splinting of the finger is warranted. Dkt. 20-1, p. 8. Plaintiff evidence is that he continues to suffer pain and his requests for treatment are denied. Dkt. 30-1, p. 4.

C. Analysis

At all times relevant to plaintiff's claims, he was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) defendant knew about plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 8374 (1994); *Petties v. Carter,* 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*); *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014); *Arnett v. Webster,* 658 F.3d 742, 750-51 (7th Cir. 2011). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014). The parties' summary judgment evidence demonstrates that they dispute whether plaintiff has a serious medical need.

The subjective element of a deliberate indifference claim "requires more than negligence and it approaches intentional wrongdoing. The Supreme Court has compared the deliberate indifference standard to that of criminal recklessness." *Burton v. Downey,* 805 F.3d 776, 784 (7th Cir. 2015) (internal citation and quotation omitted). To constitute deliberate indifference, "a

medical professional's treatment decision must be such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Petties,* 838 F.3d at 729 (internal quotation omitted).

Plaintiff has plead and supports with evidence facts on which a reasonable finder of fact could base a finding of deliberate indifference. Defendants have submitted evidence to show that they did not demonstrate deliberate indifference to plaintiff's complaints. This disputed evidence is not susceptible to resolution on summary judgment, but rather for a trial on the merits.

In his third ground for relief, plaintiff complains that Dr. Martin was deliberately indifferent to his serious medical needs for failing to timely order x-rays of his hand. He also asserts that his broken hand has not healed properly, causes him severe pain, and that for the rest of his life he will not have a proper grip with the hand. Plaintiff's second ground for relief contends that Nurse Robinson was deliberately indifferent to his medical needs when she failed to have plaintiff seen by a doctor and made a diagnosis without being qualified to do so. X-rays of plaintiff's hand were finally taken on September 18, 2015. Plaintiff believes the x-rays show evidence of a fracture that did not heal correctly. Because there was a three-month delay in diagnosing the fracture, he contends his hand healed with a permanent deformity that swells and causes him pain. Grounds two and three are plaintiff's remaining claims in this action. He withdrew his first ground for relief on June 15, 2016. Dkt. 17 p. 2. Thus only Dr. Martin and Nurse Robinson remain in this action as defendants.

"A delay in treatment may show deliberate indifference if it exacerbated the inmate's injury *or unnecessarily prolonged his pain,* and even brief, unexplained delays in treatment may constitute deliberate indifference." *Lewis v. McLean*, No. 16-1220, __F.3d__ , 2017 WL 3097864, *5 (7th Cir. July 21, 2017) (internal quotation omitted) (emphasis in original) (one and a half hour

delay between learning of painful back condition and taking action could constitute deliberate indifference); *see also Petties,* 836 F.3d at 730 (citing case for proposition that "hours of needless suffering can constitute harm"); *Gomez v. Randle,* 680 F.3d 859, 865 (7th Cir. 2012) ("Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain.") (internal quotation omitted). "Whether the length of delay is tolerable depends upon the seriousness of the condition and the ease of providing treatment." *Perez v. Fenoglio,* 792 F.3d 768, 778 (7th Cir. 2015) (citing *Cooper v. Casey,* 97 F.3d 914, 917 (7th Cir. 1996) ("'whether the plaintiffs were in sufficient pain to entitle them to pain medication within the first 48 hours after the beating' presented question for jury")). In *Perez,* one instance of a troubling delay in the plaintiff inmate's treatment was "[a]fter sustaining a gaping wound and open dislocation, he was forced to wait 24 hours before seeing a physician with authority to prescribe medication or suture wounds." *Id.*

Plaintiff has plead that he suffered pain for many months, and his complaints about the pain were not acted upon by defendants. *Perez*, *Cooper*, *Gomez*, *Petties*, and *Lewis*, *supra*, instruct that even short delays in treating pain can be deliberate indifference. These authorities also instruct that a delay that exacerbates an injury can be deliberate indifference.

A reasonable jury could find that Nurse Robinson and Dr. Martin were deliberately indifferent to treating plaintiff's complaints of a broken hand and continued pain. A reasonable jury could also find that Nurse Robinson and Dr. Martin treated plaintiff in a manner not exhibiting deliberate indifference and provided him with constitutionally adequate medical care appropriate for the circumstances. Accordingly, and as noted above, the parties' motions for summary judgment are **denied**.

The Magistrate Judge is requested to set this matter for a status conference and settlement conference in an effort to either resolve the claims or identify any matters that need to be addressed prior to trial.

**IT IS SO ORDERED**.

Date: 8/10/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

DRAE HARRIS
960081
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com